McDonald, j.
|, The defendant, James Richard Eley, was charged by grand jury indictment with aggravated rape, a violation of La, R.S. 14:42 (prior to amendment, which re-designated aggravated rape as first degree rape). The defendant pled not guilty and, following a jury trial, was found guilty as charged. The defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals designating three counseled assignments of error and three pro se assignments of error. We affirm the conviction and sentence.
FACTS
On the evening of April 20, 2012, a Friday, four-and-one-half-year-old B.H.[1] and his mother were having a fish-fry in the backyard of their home on Alice Street in St. Tammany Parish. Christopher Bums, a friend of the family who lived next door, was also there. Sometime during the evening, the defendant had stopped by to visit, then left. B.H. and his mother did not personally know the defendant. B.H.’s mother had briefly met the defendant earlier that week. Bums had hired the defendant to work on his house (next door) that he was renovating, and had allowed the defendant to live in a trailer on his property several miles away.
*467 At some point during the evening, B.H.’s mother and Bums noticed that B.H. was not in the backyard. They looked in the house, but did not find him. They walked to the street and began yelling out B.H.’s name. While still in the street, B.H.’s mother and Bums saw the defendant and B.H. walk out the front door of Bums’s house. B.H.’s mother grabbed B.H. and brought him to her backyard, while Bums confronted the defendant, wanting to know why he was alone with someone else’s child. B.H.’s mother asked B.H. what happened when he was in the house with the defendant. B.H. told his mother that they were in the bathroom | ¡.and the defendant pushed and slapped B.H.’s penis. B.H. also said that the defendant picked him up and put him on the toilet and kissed B,H.’s penis. B.H.’s mother put her finger out and told B.H. to pretend her finger was his penis and to show her what the .defendant did. B.H. kissed the tip of his mother’s finger, then put his mouth around her finger. Several days later, B.H. was taken to the Children’s Advocacy Center (CAC) in Covington (aka Hope House), where he disclosed in an interview the same information he had revealed to his mother. In the interview, B.H. did not know the defendant’s name, but referred to him as Chris’s friend. At trial, about three and a half years after the incident, B.H. testified that he did not remember being interviewed. He also testified he did not remember living on Alice Street and that nothing happened to him when he was four years old.
The defendant did not testify at trial.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of- error, the defendant argues the trial court erred in admitting into evidence B.H.’s CAC interview. Specifically, the defendant contends that because he was unable to effectively cross-examine B.H. at trial, B.H. was essentially “unavailable” to testify at trial.
At the time of trial, B.H. was one day shy of his eighth birthday. He testified at trial. Following is the relevant testimony on direct examination:
EXAMINATION BY [THE PROSECUTOR]
Q. Let’s try one more. If I told you I was wearing a green suit right now, would I be telling the truth or a lie?
A. Telling a lie.
Q. Why?
A. Because you are not wearing one.
Q. Because I’m not wearing a green suit?
A. Yeah, because you’re wearing gray.
Q. A gray. Okay.
MR. ADAIR [prosecutor]: May I approach the witness, Your Honor?
THE COURT: Permission granted.
EXAMINATION BY [THE PROSECUTOR]:
Q. [B.H.], in just a second, I want you to look on — do you see that [¡jComputer screen right there?
A. Uh-huh (affirmative response).
Q, All right. Ms. Elizabeth is putting something on the computer screen. Is that you on there—
A. Tes, sir.
Q. —when you were smaller?
A. Uh-huh (affirmative response).
Q. That’s you on that TV screen?
A, Yes, sir.-
Q.- Do you remember talking to that lady, Ms. JoBeth?
A. No, sir.
Q. No, Do you remember anything that you and Ms. JoBeth talked about?
A. No, sir.
Q. And that’s the truth?
A. (Nods head affirmatively.)
*468 Q. Is that the truth?
A. (Nods head affirmatively.)
Q. I’m, sorry, I couldn’t hear you, mail? A. Yes.
Q. Yes. Okay.
Following is the relevant testimony of B.H. on cross-examination:
Q. What is your nunu, what does that mean?
A. Huh?
Q. Who is your nunu? What does that, mean?
A. That’s like your other family.
Q. Okay.
A. I don’t remember their name, because I forgot it.
Q. And you said your cousin?
A. Yeah. (Inaudible.)
Q. Do you ever see your dad. Mark?
A. Huh?
Q. Do you ever see your dad?
A. (Shakes head negatively.)
Q. No. You were asked to look at a photograph of something on the TV screen there. Do you remember—
A. No, sir.
Q. —anything about that?
A. No, sir.
Q. Do you remember why you talked to that lady?
A. No, sir.
Q. Do you remember anything about what you talked to that lady about?
A. No, sir, because it’s been for me a very, very, like a thousand years, because it’s very old.
Q. How old are you today?
A. Seven.
Q. Did something happen to you when you were four?
A. (Shakes head negatively.) No, sir.
Q. Do you remember living on Alice Street, somewhere like that?
A. No, sir.
DQ. I’m sorry, I can’t hear you?
A. No, sir.
Q. Did someone do something to you when you were four?
A. No, sir.
Q. Do you know why you’re here today?
A. Because I’m helping Mr. Jay.
Q. I’m sorry, I can’t hear?
A. Because I’m helping Mr. Jay.
Q. Before you came here today, your mom told you to tell the truth, correct?
A. Yes, sir.
Q. You said that already. Do you remember the TV screen you just looked at? Do you remember that interview?
A. Well, I used to remember it last weekend on Wednesday.
Q. What do you mean? I’m sorry, could you explain what you mean?
A. Yesterday, weekend, yesterday weekend. I noticed that on Wednesday, because Mr. Jay showed me it.
Q. Do you remember talking to that lady? Do you remember what you talked about in that screen you just saw, the picture?
A. No.
Q. Do you remember being asked any questions?
A. No, sir. I know that I was shown something, but I don’t know what I was shown.
Q. And the questions that I have asked you, are you telling the truth today?
A. Yes, sir.
Mid-trial, following the testimony of B.H., the defendant filed a motion to exclude the CAC interview, which had not yet been played for the jury. The defendant argued that B.H.’s memory loss made *469 him an unavailable witness. According to defense counsel, B.H. “was unable to provide any meaningful answers.” The trial court denied the defendant’s motion, finding in pertinent part:
The witness did not refuse to answer anything, he was available for questioning, and I find that the language in these cases support the admission of the tape provided that all of the other guidelines in 15:440 are met. But on this basis I do not find that there is a basis to exclude the video tape, so your motion is denied.
The defendant argues in brief that he was unable to “effectively” cross-examine B.H. According to the defendant, “precedent suggests” that when La. R.S. 15:440.5 is “carefully complied with and the videotaped victim is subject to effective cross-examination, there is no violation of the defendant’s constitutional rights.” The defendant suggests that B.H.’s “inability/refusal” to answer questions | ^regarding the alleged assault rendered him essentially unavailable at trial. According to the defendant, B.H. was not subject to effective cross-examination. Therefore, defendant’s constitutional right to confront his accuser was violated. Accordingly, the defendant asserts the CAC interview should not have been allowed into evidence at trial.
The defendant cites in brief State in Interest of R.C. (R.C. II), 514 So.2d 759 (La.App. 2nd Cir.), writ denied, 516 So.2d 128 (La.1987), and states that in this case the second circuit “upheld the trial court’s refusal to admit a videotaped interview of the victim when the victim was present for trial but refused to testify about the offense.” Pointing out that the victim in R.C. II, “was unwilling to proceed with any further testimony about the incident, either on direct or cross-examination,” the defendant avers that the “second circuit upheld the trial court’s refusal to admit the videotaped interview” in R.C II because the victim could not be effectively cross-examined by the defendant., R.C. II, 514 So.2d at 760.
R.C. II, as referred to by the defendant, did not make any findings about the unavailability of a witness; rather, that 1987 case addressed its earlier decision of State in the interest of R.C. (R.C. I), 494 So.2d 1350 (La.App. 2nd Cir.1986), which was the second circuit’s treatment of the State’s writ application, wherein the State argued in a case alleging aggravated rape of a five-year-old child that the trial court erred in finding the juvenile victim unavailable to testify even though she took the stand and answered some questions on direct and cross-examination. R.C. II, 514 So.2d at 760. The second circuit granted the State’s writ, placed the matter on the regular docket, then recalled the writ and remanded the case. R.C. I, 494 So.2d at 1351. In this 1986 decision, the second circuit found the victim was not available for cross-examination. According to the second circuit: “Although she took the stand, answered general questions on direct and a few questions on cross, she refused to talk about, the alleged offense. Cross-examination [cannot] be | (¡effective when it is not permitted to cover the facts of the alleged offense.” R.C. I, 494 So.2d at 1356. Accordingly, the second circuit agreed that the trial court correctly held inadmissible at teial the victim’s videotaped interview of what the defendant had done to her. Id. There is a difference between refusing to testify (as was the case in R.C. II) and an inability to remember (as in the case under review).
We do not agree with our sister circuit’s treatment of the law on the unavailability of a juvenile witness/victim and its effect on the admissibility vel non of a videotaped interview of the victim. Despite the law of the second circuit, we do not find the thirty-year-old case of R.C. II, which *470 was decided prior to Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to be persuasive authority on these issues. Cf. State v. Guerra, 36,347 (La.App. 2nd Cir. 12/18/02), 834 So.2d 1206, 1216-17, writ denied, 2003-0072 (La. 4/25/03), 842 So.2d 398.
The statutory guidelines of La. R.S. 15:440.1 et seq, provide for the admissibility of CAC videotapes at trial. Louisiana Revised Statutes 15:440.4 and 15:440.5. are designed to ensure the reliability of the videotaped oral statement of a-child victim. Louisiana Revised Statutes 15:440.4(A) provides five requirements which must be satisfactorily proven before such a videotape can be considered competent evidence. Louisiana Revised Statutes 15:440.5(A) provides eight requirements, some of which overlap those in La. R.S. 15:440.4(A), for the videotape to be admissible. State v. Ledet, 96-0142 (La.App. 1st Cir. 11/8/96), 694 So.2d 336, 342, writ denied, 96-3029 (La. 9/19/97), 701 So.2d 163.
The applicable provision herein is La. 'R.S. 15:440.5(A)(8), which provides that a videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if the protected person is available to testify. Despite the defendant’s assertion, there is nothing in the Constitution so restrictive as to suggest that only effective cross-examination would | ?be tolerated un-dér the law. In State v. Kennedy, 2005-1981 (La. 5/22/07), 957 So.2d 757, 775-78, rev’d on other grounds, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the defendant argued that the admission into evidence of a videotaped statement of the victim violated the Confrontation Clause because she was unavailable for cross-examination due to lack of memory. The Kennedy Court, 957 So.2d at 777, noted that under Crawford and California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970), when the declarant appears at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. The Kennedy Court, rejected the argument that the victim’s poor memory rendered her unavailable for cross-examination despite her physical presence on the stand, noting that the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. Kennedy, 957 So.2d at 777, see State v. Graham, 2013-1806 (La.App. 1st Cir. 7/3/14), 148 So.3d 601, 608, rev’d on other grounds, 2014-1801 (La. 10/14/15), 180 So.3d 271 (per curiam).
The law, thus, requires only that the victim be available at trial to testify. B.H. was available to testify and, in fact, testified at trial, subject to cross-examination. On cross-examination, B.H. did not refuse to testify, but only indicated that he did not remember being interviewed (in the CAC) setting about three-and-one-half years prior. When defense counsel asked B.H., “Did someone do something to you when you were four?” B.H. responded, “No, sir.” This questioning arguably impeached the earlier statements- of B.H. in his CAC interview and, as such, inured to the benefit of the defendant.
In any event, this court recently addressed this precise issue in Graham, wherein the four-year-old victim, R.B., provided a recorded statement that the defendant had touched her vagina. At trial, R.B., who was then nine years old, [s“had no idea why she was in court and did not recognize the defendant in court. She also did not remember what had occurred when she was four years old and did not remember giving a recorded statement.” Graham, 148 So.3d at 605. During a recess following R.B.’s testimony, the defendant *471 sought to exclude RJB.’s recorded statement, arguing that she was unavailable to testify because of her lack of memory of the incident. Id. at 607. The trial court overruled the objection, finding that under Kennedy and Green, “there was no confrontation clause violation in admitting a prior recorded statement of a witness, where the witness was produced at trial, even when the witness'had a complete lack of memory of the prior events.” Graham, 148 So.3d at 608.
Finding no error in the trial court’s ruling, we found the admission of the videotaped statement of the victim into evidence was proper and,not violative of the defendant’s right to confront his accuser! In particular, we opined:
United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) [noted] (“[an opportunity for .effective cross-examination] is not denied when a witness testifies as to his current belief but is unable, to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witnesses] bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, ...) the very fact that he has a bad memory.”), and Green, 399 U.S. at 157-58, 90 S.Ct. at 1935 (wherein the Court reiterated that the primary object of the Confrontation Clause is to allow “personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief ”)(emphasis added).
Graham, 148 So.3d at 608-09.
Based on Owens and Crawford, a declarant’s appearance and subjection to cross-examination at trial are all that is necessary to satisfy the Confrontation Clause, even if the declarant suffers from memory loss. State v. Davis, 2013-237 (La. App. 5th Cir. 10/30/13), 128 So.3d 1162, 1168, writ denied, 2013-2751 (La. 5/23/14), 140 So.3d 723. Accordingly, the CAC videotape was properly admitted into evidence, and the trial court did not err in denying the defendant’s mid-trial motion to exclude- the victim’s recorded forensic interview.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues his right to due process was violated by the admission of the CAC interview. Specifically, the defendant contends the State violated Brady when it did not disclose prior to trial that B.H. “had no recollection of the events.”
At mid-trial, when the defendant moved to exclude the CAC interview, he also made a motion, in the alternative, for a mistrial based on a Brady violation. At issue were the following remarks made by the prosecutor, during his opening statement:
Now [B.H.], eight-year-old [B.H.], excuse me, eight years old- tomorrow, [B.H.] is going to be here, and you will have the opportunity to hear from him. Now, this has been three and a half years to get to this point. At four years old, he was just young enough to not remember. And after three and a half years, eight-year-old [B.H]’s memory is failing. Eight-year-old [B.H.] doesn’t re *472 call much about April 20 of 2012. Eight-year-old . [B.H.] will be here, but what eight-year-old [B.H.] may not tell you four-year-old [B.H.] will, tell you again, and again, and again.
Defense counsel argued in his motion that this information that B.H. would testify that he did not remember what happened to him should have been turned over to the defense prior to trial. According to defense counsel, such information was “an inconsistent statement” discoverable through Brady. Defense counsel further stated that “A witness not remembering anything regarding the events is exculpatory, and we didn’t find out about that until the State’s opening statement.”
The prosecutor responded in pertinent part to the alleged Brady violation as follows:
What I can tell the Court is a witness not remembering an |inevent, particularly a seven-year-old witness not remembering an event three-and-a-half years ago, is not an inconsistent statement or an exculpatory statement that would trigger a Brady disclosure. Had he indicated to the State in the affirmative that, nothing had happened at any point, I would agree with Mr. Carrington. That I would have had to, and certainly would have, disclosed over to defense as an exculpatory statement for the purposes of fulfilling my Brady obligation.
On the witness stand he indicated that he did not remember. Not remembering something is not an inconsistent statement triggering Brady. It’s in effect a memory loss or a truthful — certainly a truthful answer of not recalling an event or events in this case that are alleged to have occurred over 40 months ago.
Under cross-examination is the first time that [B.H.] indicated in the negative, albeit it’s a vaguely worded question, but in the negative that nothing happened or he said “No” to the question, “Did anything happen when you were four years old?”
Had he indicated that to me at any time with me prior meeting with him, I ■assure you they would have been the first to know. But this — what the allegation in this — of this alleging that I committed or the State through me had committed a Brady violation is untenable and inapplicable. Any indication that Mr. — that [B.H.] did not remember is not exculpatory, is not inconsistent on its face and does not trigger the requirements and my responsibilities under Brady.
In denying the mistrial, the trial court stated:
Okay. The Motion For Mistrial is denied. The State has indicated that it did not have any indication prior to the time that the witness testified under cross-examination that there would be any denial of any earlier event. And without any further support, I have to agree with Mr. Adair’s argument that a lack of memory is not an inconsistent statement, and therefore would not trigger a Brady violation. Your Motion For Mistrial is denied.
It is well settled that the State has an affirmative duty to disclose exculpatory evidence favorable to the defendant. Brady v. Maryland, 373 U.S. 83, 86-87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). But in order to prove a Brady violation, the defendant must establish, inter alia, that the evidence in question was, in fact, exculpatory or impeaching. State v. Garrick, 2003-0137 (La. 4/14/04), 870 So.2d 990, 993 (per curiam). Disclosure of exculpatory evidence should be made in time to allow a defendant to make effective use of such information in the presentation of his case. State v. Prudholm, 446 So.2d *473 729, 738 (La.1984). However, even where disclosure is made during trial, it will be [^considered timely if the defendant is not prejudiced. State v. Huls, 95-0541 (La. App. 1st Cir. 5/29/96), 676 So.2d 160, 170, writ denied, 96-1734 (La. 1/6/97), 685 So.2d 126. In order to be entitled to a reversal for failure to timely provide exculpatory information, the defendant must show that he was prejudiced. Discovery violations do not. provide grounds for reversal unless they have actually prejudiced the defendant. Garrick, 870 So.2d at 993.
A discovery violation involving the State’s failure to disclose exculpatory evidence does not require reversal as a matter of the Due Process Clause unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. Garrick, 870 So.2d at 993. While late disclosure, as well as nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial, in both instances the impact on the defense “must be evaluated in the context of the entire record.” State v. Kemp, 2000-2228 (La. 10/15/02), 828 So.2d 540, 545 (per curiam).
We do not find the prosecutor’s remark in his opening statement that B.H. does not recall much about the incident to be exculpatory. That is, B.H.’s alleged failing memory, or his not remembering having participated in a CAC interview when he was four-and-one-half years old, did not tend to establish the defendant’s innocence.
Arguably, the prosecutor’s knowledge that B.H.’s memory was failing was evidence with impeachment value, and may have constituted a discovery violation. The ostensible discovery violation, however, did not result in actual prejudice to the defendant and, as such, there were not grounds for reversal. See Garrick, 870 So.2d at 993. The disclosure of B.H.’s potential memory loss was made before the first witness at trial was called. More importantly, B.H. was called to the stand to testify, and defense counsel was afforded the opportunity to vigorously cross-examine B.H. about what he remembered. Cf. State v. Barker, 628 So.2d 168, 176 (La. App. 2nd Cir.1993), writ denied, 93-3194(La. 3/25/94), 635 So.2d 236. As noted, when B.H. testified on cross that no one had done anything to him when he was four years old, defense counsel, in effect, impeached B.H. Under these circumstances, we do not see how the defendant was in any way prejudiced by learning about B.H.’s possible memory loss during opening statements. See Huls, 676 So.2d at 170.
Moreover, there was no constitutional error because the prosecutor’s remarks in his opening statement about the fact that B.H,’s “memory is failing” did not constitute material evidence. See State v. Marshall, 94-0461 (La. 9/5/95), 660 So.2d 819, 825-27. Favorable evidence is material, and constitutional error results from its suppression by the government, “if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” United States v. Bagley, 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985). A “reasonable probability” is a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. See State v. Smith, 95-1826 (La.App. 1st Cir. 9/27/96), 681 So.2d 980, 992, writ denied, 96-2568 (La. 3/27/97), 692 So.2d 390.
Brady and its progeny do not establish a general rule of discoverability. A prosecutor does not breach his constitutional duty to disclose favorable evidence unless the omission is of sufficient *474 significance to result in the denial of the defendant’s right to a fair trial. The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish “materiality” in the constitutional sense. State v. Sparks, 88-0017 (La. 5/11/11), 68 So.3d 435, 486, cert. denied sub nom, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
At trial, defense counsel, through cross-examination of B.H., exploited his memory loss and potentially impeached him. Moreover, defense counsel used this hsvery issue to advance his reasonable doubt claim in closing argument:
And, of course, as you remember in Voir Dire we talked about reasonable doubt based on reason and common sense? What if maybe he did it? Possibly did it? Maybe he didn’t do it? Remember I asked each one of you that question?
The State is asking you to find James Eley guilty on this — based on the testimony of a child who came to court and said not only did he not remember making that taped statement, but also he did not — nothing happened to him and he didn’t, remember anything happening to him.
Accordingly, the jury was exposed to this evidence and was free to consider it during deliberations. See State v. Woolridge, 555 So.2d 1385, 1389 (La.App. 4th Cir.1989), writ denied, 561 So.2d 113 (La. 1990); State v. Dozier, 553 So.2d 931, 932-33 (La.App. 4th Cir.1989), writ denied. 558 So.2d 567 (La.1990).
Based on the foregoing, we find the defendant has failed to show that he was prejudiced in any way or that, the proceedings somehow were rendered fundamentally unfair. See State v. Pitre, 2004-0545 (La.App. 1st Cir. 12/17/04), 901 So.2d 428, 441-42, writ denied, 2005-0397 (La. 5/13/05), 902 So.2d 1018. Had such evidence of B.H.’s memory loss been disclosed prior to trial instead of at the beginning of trial, we are convinced that the result of the proceeding would not have been different. See Bagley, 473 U.S. at 682, 685, 105 S.Ct. at 3383, 3385.
The defendant has not established a viable Brady claim and, as such, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues that his life sentence at hard labor, as applied to him, is unconstitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the [uoffense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842 (La.App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1st Cir.1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors that the trial court must consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be *475 recited, the record must reflect the trial court - adequately considered the criteria. State v. Brown, 2002-2231 (La.App. 1st Cir. 5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of La, Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with' La. Code Crim. P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The trial judge should review the defendant’s personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La.1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).
For the defendant’s aggravated rape conviction, the trial court imposed the mandatory life sentence at hard labor. See La. R.S. 14:42(D)(1) (so designated at | ifithe time the crime was committed).[2] The defendant argues in brief that this case does not present an egregious case of aggravated rape because B.H. endured no physical or psychic trauma, and he had no memory of the incident. The defendant further suggests that the trial court gave no consideration to the factors that he (the defendant) was intoxicated at the time of the offense and that he, himself, was a victim of childhood sexual abuse. According to the defendant, the trial court may not have understood its duty to consider whether a life sentence was appropriate under the particular circumstances of this case.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court opined that if a trial judge were to And that the punishment mandated by La. R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounted to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime”, he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law, While both Dorthey and Johnson involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in Dorthey are. not restricted in application. to the penalties provided by La. R.S. 15:529.1. State v. Collins, 2009-1617 (La.App. 1st Cir, 2/12/10), 35 So.3d 1103, 1108, writ denied, 2010-0606 (La. 10/8/10), 46 So.3d 1265; See State v. Fobbs, 99-1024 (La. 9/24/99), 744 So.2d 1274 (per curiam).
The defendant contends that the trial court is obligated by law to consider |1fithe defendant and his background, but, the trial court did not even bother to order a presentence investigation report to “acquaint itself with the background”' of the defendant. There is no need for the trial court to justify a sentence under La. Code Crim. P. art. 894.1 when it is legally *476 required to impose that sentence. As such, the failure to articulate reasons as set forth in La. Code Crim. P. art. 894.1 when imposing a mandatory life sentence is not an error; articulating such reasons or factors would be an exercise in futility since the court has no discretion. State v. Felder, 2000-2887 (La.App. 1st Cir. 9/28/01), 809 So.2d 360, 371, writ denied, 2001-3027 (La. 10/25/02), 827 So.2d 1173. See State v. Ditcharo, 98-1374 (La.App. 5th Cir. 7/27/99); 739 So.2d 957, 972, writ denied. 99-2551 (La. 2/18/00), 754 So.2d 964; State v. Jones, 31,613 (La.App. 2nd Cir. 4/1/99), 733 So.2d 127, 146, writ denied, 99-1185 (La. 10/1/99), 748 So.2d 434; State v. Williams, 445 So.2d 1264, 1269 (La.App. 3rd Cir.), writ denied, 449 So.2d 1346 (La. 1984).
Mandatory sentences have been upheld repeatedly as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment. See State v. Jones, 46,758-59 (La.App. 2nd Cir. 12/14/11), 81 So.3d 236, 249, writ denied, 2012-0147 (La. 5/4/12), 88 So.3d 462. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances, this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 709 So.2d at 676.
There is nothing particularly unusual about the defendant’s circumstances that would justify a downward departure from the mandatory sentence under La. R.S. 14:42(D)(1). The record before us clearly established an adequate factual basis for the sentence imposed. The defendant has not shown by clear and |17convincing evidence that he is exceptional such that a mandatory life sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory life sentence is warranted. The sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
This assignment of error is without merit.
PRO SE ASSIGNMENTS OF ERROR NOS. 1 and 2
In these two pro se assignments of error, the defendant has raised’ and addressed the same arguments that have been raised and addressed by appellate counsel in the first and second counseled assignments of error, respectively. Accordingly, just as the counseled assignments of error are without merit, so too are the first and second pro se assignments without merit.
PRO SE ASSIGNMENT OF ERROR NO. 3
In his third pro se assignment of error, the defendant argues the trial court abused its discretion in not including several responsive verdicts for the jury to consider. Specifically, the defendant contends that during the jury charges, the trial court lacked the authority to remove from the jury’s consideration the responsive verdicts of forcible rape, attempted forcible rape, simple rape, and attempted simple rape.
Louisiana Code of Criminal Procedure article 814(A)(8.1) provides the following responsive verdicts for aggravated (now, first degree) rape of a child under the age of thirteen: Guilty; Guilty of attempted *477 aggravated or first degree rape; Guilty of forcible or second degree rape; Guilty of attempted forcible or second degree rape; Guilty of simple or third degree rape; Guilty of attempted simple or third degree rape; Guilty of sexual battery; Guilty of molestation of a | ^juvenile or a person with a physical or mental disability; Guilty of attempted molestation of a juvenile or a person with a physical or mental disability; Guilty of indecent behavior with a juvenile; Guilty of attempted indecent behavior with a juvenile; Not guilty.
La. R.S. 14:42.1 provided in pertinent part in 2012:[3]
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of. the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.
La. R.S. 14:43 provided in pertinent part in 2012:[4]
A. Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
(1) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim’s incapacity.
(2) When the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and the offender knew or should have known of the victim’s incapacity.
The attempt of forcible rape and simple rape involve the same elements of these crimes except that, despite a defendant having the specific intent to commit one of these crimes, he did or omitted an act for the purpose of and tending directly toward the accomplishment of his object. See La. R.S. 14:27(A).
119Pefense counsel never objected to forcible rape and simple rape (and the attempts of each) not being included in the jury instructions. Following closing arguments, what defense counsel actually objected to was the inclusion in the jury charges of molestation of a juvenile and indecent behavior with a juvenile (and the attempts of each of these crimes). The trial court overruled this objection. We nevertheless address the trial court’s exclusion of forcible rape and simple rape from the jury instructions because the defendant also argues' in his1 pro se brief that, if defense counsel did not object at trial to preserve the issue for appellate review, then it constituted ineffective assistant of counsel.
*478 We find the trial court did not err in its jury charges on responsive verdicts. When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under La. Code Crim. P. arts. 814 or 815 (responsive verdicts), the .court shall charge the jury as to the law applieablé to each offense. See La. Code Crim. P. art. 803. While a trial court must charge the jury of the law applicable to lesser included offenses under La. Code Crim. P. art, 803, the charges must be pertinent and there must be evidence which would support a conviction of the lesser offenses. See State v. Henry, 449 So.2d 486, 488 (La. 1984). Louisiana Code of Criminal Procedure article 803 can reasonably be interpreted as requiring only those charges of which the accused can be found guilty under the indictment' and the evidence. Id. at 489;
At the time the crime was committed, the defendant was thirty years old and B.H. was four years old. Accordingly, La. Code Crim. art. 814(A)(8.1), which provided for the responsive verdicts of aggravated ■ rape of a child under the age of thirteen, was the proper subparagraph with which to inform the jury. Further, the trial court correctly included in its jury instructions the crimes of molestation of a juvenile and indecent behavior with a juvenile (and the attempts ■ of each of these Lncrimes) because these crimes “fit” the facts; that is, they were supported by the evidence. According to testimonial evidence,. the defendant led B.H. away from his house. The defendant took B.H. into the bathroom of a house under renovation he (the defendant) was .working on. The defendant sat B.H, on top of the toilet and, despite B.H.’s protestations, the defendant touched B,H.’s penis and put B.H.’s penis in his mouth. These acts easily fall within the definitions of molestation of a juvenile and indecent behavior with a juvenile. Louisiana Revised Statute 14:81.2(A)(1) provides in pertinent part:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age. of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use; of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
La. R.S. 14:81 provides in pertinent part:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.
By contrast, neither forcible rape nor simple rape was supported by the evidence. Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in La, Code Crim. P. art. 814(A) if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense. See La. Code Crim. P. art. 814(C); State v. Richard, 39,705 (La.App. 2nd Cir. 5/11/05), 902 So.2d 1271, 1274-76, writ denied, 2005-1713 (La. 2/10/06), 924 So.2d 161. Regarding forcible rape, there was no evidence adduced at trial that the defendant used force or threats of physical *479 121 violence, or that B.H. was incapable of resisting or understanding the act because of a stupor or abnormal condition of the mind produced by narcotics. See La. R.S. 14:42.1(A)(1) & (2). Similarly, regarding simple rape, there was no evidence adduced at trial that B.H. was incapable of resisting or understanding the act because of a stupor or abnormal condition of the mind produced by an intoxicating agent; or that B.H. was incapable of understanding the nature of the act because unsoundness of mind. See La. R.S. 14:43(A)(1) & (2); State v. Taylor, 34,096 (La.App. 2nd Cir. 12/15/00), 774 So.2d 379, 386-87, writ denied, 2001-0312 (La. 12/14/01), 803 So.2d 984 (finding that in prosecution for aggravated rape, the trial court properly excluded responsive verdicts of simple rape and attempted simple rape because evidence did not reasonably support such verdicts, given that defendant’s contention the jury could infer the victim was intoxicated because she went to a nightclub to dance was undermined by his own testimony wherein he never suggested the victim was intoxicated or incapacitated in any way, and by victim’s testimony that she never drank alcohol). See also State v. Papillion, 2010-1317 (La.App. 3rd Cir. 5/4/11), 63 So.3d 414, 433-35, writ denied, 2011-1149 (La. 11/18/11), 75 So.3d 447.
Accordingly, the trial court did not err in refusing to include in its jury instructions the responsive verdicts of forcible rape and simple rape (and the attempts of each of these crimes). Because these verdicts were not proper responsive verdicts, any lack of objection by defense counsel regarding this issue did not constitute ineffective assistance of counsel.
This pro se assignment of error is without merit.
For the foregoing reasons, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Victims of sex offenses are referred to by their initials. See La. R.S. 46:1844(W).

. Under current law, aggravated rape is referred to as “first degree rape.”

. As of August 1, 2015, forcible rape is referred to as second degree rape. See La. R.S. 14:42.1(C).

. As of August 1, 2015, simple rape is referred to as third degree rape. See La. R.S. 14:43(C).