McDONALD, J.
A grand jury indicted the defendant, Roderick White, with second degree murder, a violation of LSA-R.S. 14:30.1. The defendant pled not guilty and, following a jury trial, was found guilty as charged. The trial court sentenced him to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.
FACTS
On the afternoon of January 6, 2015, Brandon Coleman was driving around the Scenic Highway area in Baton Rouge with three passengers, including the defendant. Nearby on Walnut Street, Gregory Spears was at his mother-in-law's house, selling CDs out of the trunk of his car. NaQuian Robinson drove up, got out, and bought some CDs from Mr. Spears. As the two men stood there talking, Mr. Coleman drove by and stopped at a nearby carwash. The defendant got out of the car, walked over to the two men, and asked Mr. Spears about some CDs. When Mr. Spears turned to look in his trunk, the defendant pulled a gun and tried to rob Mr. Robinson. The defendant and Mr. Robinson wrestled over the gun, and Mr. Robinson was shot multiple times.
The defendant ran down the street and cut through a yard to Chestnut Street, where Mr. Coleman picked him up and drove away. Mr. Robinson got into his car, drove a short distance, and crashed into a fence. His family took him to the hospital, where he died of his wounds that same day. Mr. Spears was unable to identify the shooter. When the police brought Mr. Coleman in for questioning, he implicated the defendant in Mr. Robinson's shooting. The defendant did not testify at trial.
ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues the trial court erred in allowing the jury to hear the videotaped statement Brandon Coleman gave to police. Specifically, the defendant contends that Mr. Coleman's failure, at trial, to recall the events surrounding the shooting, or the giving of his videotaped statement, violated the defendant's right to confrontation, because Mr. Coleman could not be *14 effectively or meaningfully cross examined about his videotaped statement.
According to Mr. Coleman's statement to police, Mr. Coleman was driving the black Toyota Camry, in which the defendant and two other people were passengers, before the defendant got out of the car and shot Mr. Robinson. After the shooting, the defendant ran down Walnut Street, cut through a yard, and ran to Chestnut Street (one street down and parallel to Walnut Street). Mr. Coleman drove the car to Chestnut Street and picked up the defendant. The defendant's movements immediately after the shooting were confirmed by Alexandria Edwards, who testified at trial that the front of her house faced Chestnut Street and the back of her house faced Walnut Street. After hearing gunshots, she looked out the window and saw someone running with a gun through the yard. She then saw the armed person jump into a black car on Chestnut Street.
In his statement, Mr. Coleman specifically disclosed that he heard the gunshots and that the defendant "did do it." Mr. Coleman did not see a gun when the defendant got out of the car, but Mr. Coleman saw the defendant with a gun when he got back in the car. When asked if he actually saw the defendant shoot Mr. Robinson, Mr. Coleman replied that he did not actually see the defendant shoot Mr. Robinson, but saw him shooting in that direction. When Mr. Coleman picked the defendant up on Chestnut Street, the defendant said he had shot himself in the leg. The defendant told Mr. Coleman not to bring him to the hospital.
At the defendant's trial, before Mr. Coleman took the stand, the trial court told him he had the right to testify as well as the right not to testify. Mr. Coleman was being charged as an accessory after the fact and had not yet been tried on that charge. Mr. Coleman told the trial court that he would testify. The prosecutor told the trial court that he anticipated a medical issue arising when Mr. Coleman took the stand. The prosecutor noted that Mr. Coleman had "had a fall" and that he "may or may not have some issues with the memory."
On direct examination, Mr. Coleman knew his age and his date of birth. He also knew he did not live in Baton Rouge anymore. When asked if he had experienced a traumatic incident in the last year or year-and-a-half, Mr. Coleman said he did not know. Mr. Coleman then followed up that he had first experienced memory issues around September of the previous year. Mr. Coleman explained that he was getting treatment in Florida for the memory issues. When asked about January 6, 2015, the day the defendant shot Mr. Robinson, Mr. Coleman stated that he did not remember anything about that incident. Mr. Coleman further stated he did not remember talking to the police about the shooting.
The prosecutor played a snippet from the beginning of Mr. Coleman's videotaped statement and asked Mr. Coleman if he recognized himself. Mr. Coleman testified, "Yeah, that's me." The prosecutor then sought to introduce Mr. Coleman's videotaped statement into evidence. Defense counsel objected to the playing of the video, arguing it violated the Confrontation Clause. According to defense counsel, "Clearly, this is not former testimony, because he was never under oath and I've never had an opportunity to cross-examine, for whatever reason." Apparently, because of Mr. Coleman's head injury and his alleged memory loss, defense counsel argued that he could not conduct a meaningful cross examination. The trial court overruled the objection, and Mr. Coleman's statement was played for the jury.
*15 During defense counsel's brief cross examination of Mr. Coleman, the following exchange took place:
Q. Mr. Coleman-
A. Yeah.
Q. -Your father was in that taped statement. You talked to your father. Do you remember that?
A. Nah. I don't remember, but I see he was in there.
Q. Okay. What does your father do for a living? Is he a cop?
A. Yeah.
Q. He's a police officer?
A. Uh-huh.
Q. Okay. And to be clear for the record, you-you were 20 years old in 2015, because you're 22 now, right?
A. Right.
Q. So, you were 20 then, right?
A. Right.
Q. But to be quite honest, you have no recollection of any event in January of-the 6th of January of 2015?
A. Yeah. After September, I don't remember nothing.
Q. Okay.
On appeal, the defendant argues that the Sixth Amendment to the United States Constitution and Louisiana Constitution Article I, Section 16, guarantee an accused the right to confront and cross examine the witnesses against him. The defendant points out that, at trial, Mr. Coleman was unable to recall the events surrounding the shooting or giving the videotaped statement to the police. While defense counsel had the opportunity to cross examine Mr. Coleman, according to the defendant, the record in this case "shows there was no effective or meaningful cross-examination" of Mr. Coleman. The defendant asserts that defense counsel's inability to conduct a meaningful and effective cross examination of the witness against him resulted in the denial of his right to due process and confrontation.
In Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause requires that testimonial statements can only be admitted as evidence at a criminal trial when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross examine the declarant. In footnote nine of its opinion, the Crawford court stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n.9, 124 S.Ct. at 1369 n.9. It further stated, "[t]he Clause does not bar admission of a statement as long as the declarant is present at trial to defend or explain it." Id. ; see State v. Davis, 13-237 (La. App. 5 Cir. 10/30/13), 128 So.3d 1162, 1168, writ denied, 13-2751 (La. 5/23/14), 140 So.3d 723.
Despite the defendant's argument regarding the lack of meaningful or effective cross examination, there is nothing in the Constitution so restrictive as to suggest that only meaningful or effective cross-examination would be tolerated under the law. In State v. Eley, 15-1925 (La. App. 1 Cir. 9/16/16), 203 So.3d 462, 470, writ denied, 16-1844 (La. 9/6/17), 224 So.3d 982-83, we addressed this issue:
In State v. Kennedy, 2005-1981 (La. 5/22/07), 957 So.2d 757, 775-78, rev'd on other grounds, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the defendant argued that the admission into evidence of a videotaped statement of the victim violated the Confrontation Clause because she was unavailable for cross-examination due to lack of memory. The Kennedy Court 957 So.2d at 777, noted that under Crawford and *16 California v. Green, 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970), when the declarant appears at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. The Kennedy Court [ ] rejected the argument that the victim's poor memory rendered her unavailable for cross-examination despite her physical presence on the stand, noting that the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. [ Id. ], see State v. Graham, 2013-1806 (La. App. 1st Cir. 7/3/14), 148 So.3d 601, 608, rev'd on other grounds, 2014-1801 (La. 10/14/15), 180 So.3d 271 (per curiam).
The law, thus, requires only that the declarant be available at trial to testify. Mr. Coleman was available to testify and, in fact, testified at trial, subject to cross examination. On cross examination, Mr. Coleman did not refuse to testify, but only indicated that he did not remember the day the defendant shot Mr. Robinson or that he gave the videotaped statement to police. See Eley, 203 So.3d at 470 ; see also Graham, 148 So.3d at 608 (finding that, under Kennedy and Green, there was no confrontation clause violation in admitting a witness's prior recorded statement, where the witness was produced at trial, even when the witness had a complete lack of memory of the prior events).
In United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988), the Supreme Court opined that an opportunity for effective cross examination is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. "It is sufficient," the Owens court continued, "that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination ...) the very fact that he has a bad memory." Id. ; see Graham, 148 So.3d at 608-09.
Based on Crawford, Owens, Eley, and Graham, a declarant's appearance and subjection to cross examination at trial are all that is necessary to satisfy the right to confrontation, even if the declarant suffers from memory loss. See Davis, 128 So.3d at 1166-69 (The admission of an unsworn, out-of-court statement of a witness who implicated the defendant, but who claimed memory loss on the stand at trial, did not violate the defendant's right to confrontation, because this witness was sworn in at trial and answered questions posed to her; although she claimed she did not remember giving the statement to the police, she admitted the voice on the recorded statement sounded like her and, as such, the defendant was afforded an adequate opportunity to cross examine the witness). Accordingly, the trial court did not err in allowing Mr. Coleman's videotaped statement into evidence. The assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.