PER CURIAM.
11 Writ denied. David Brown, one of the “Angola 5,” was charged and convicted of the first degree murder of prison guard Captain David Knapps. A jury sentenced him to death for this crime. About four months after receiving this death sentence, Brown learned that, prior to his trial, the State had interviewed inmate Richard Do-mingue who was friendly with Brown’s co-defendant, Barry Edge, while Edge and *1266 Domingue lived on the same tier at Angola Mowing the Angola 5’s attempted escape and the murder of Captain Knapps. . Accordingly, Brown made a motion for new trial, alleging that this statement constituted Brady material that the State was required to provide Brown in advance of trial. The District Court granted Brown’s motion in part, finding it is reasonably probable the jury may have reached, a different decision or that the evidence presented is such that the court and others can be confident of the jury’s verdict, By a two to one majority, CA reversed this ruling, holding
defendant has not shown that there is a reasonable probability that his sentence would have been different had the statement at issue in .this writ been disclosed. He' therefore cannot show materiality under Brady or prejudice from his failure to raise the earlier claim.
Both this Court and the United States Supreme Court have acknowledged |2that not every violation of the broad duty of disclosure constitutes a Brady violation. Indeed, in Strickler v. Greene, the United States Supreme, Court distinguished violations of the' duty to. disclose from “true Brady violations”:
[T]he term- “Brady violation” is sometimes used to’refer to any breach of the broad obligation to disclose exculpatory evidence — that is, to any suppression of so-called “Brady material” — althQugh, strictly speaking, there is never a real “Brady violation” unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidénce would have produced a different verdict[1]
This Court echoed this operative distinction in State v. Bright:
[I]t is important to note that Brady and its progeny do not establish a general rule. of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. ' A prosecutor does ’ not breach any constitutional duty to disclose favorable evidence unless the “omission is of sufficient significance to result in the denial of the 'defendant’s right to a fair trial.”[2]
The United States Supreme Court clearly laid out the three components of a “true Brady violation” in Strickler: “The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully- or inadvertently; and prejudice must have ensued.”[3] Relative to the third “materiality” component, the United States Supreme Court and this Court have offered different iterations of the standard, some of which this Court referenced in Bright:
For purposes of Brady’s due process rule, a reviewing court determining materiality must ascertain:
not whether the defendant would more Jikely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence,
Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). See also, State v. Strickland, 94-0025, p. 38 (La.11/1/96), 683 So.2d 218, 234. Thus, the *1267 reviewing court does not put ¡the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second' trial. Instead, a Brady violation occurs when the “evidentiary suppression ‘undermines confidence in the outcome of the trial.’ ” Kyles, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting [United States v.] Bagley, 473 U.S. [667,] 678, 105 S.Ct. [3375,] 3381, 87 L.Ed.2d 481).[4]
Consistent with Strickler and Bñght, we find the State’s failure to disclose Domingue’s statement to Brown does not constitute a “true Brady violation.” Specifically, because (1) the statement is. not favorable to Brown, (2) the failure to disclose the statement was not prejudicial to him (he., the statement was not “material” for Brady purposes). According to Brown, Domingue relayed to the State the following details concerning Captain Knapps’ murder which Domingue allegedly learned in conversations with Brown’s co-defendant, Barry Edge:
But when I brought it up to him in a serious conversation'we were having one day, I wanted to know personally how did things, you know:what, what turn of events made everything turn so bad and I asked him. I said how did everything turn out so bad to where y’all had to kill Captain [Kn]apps. Because I just can’t see, you had Foot [David Bro'wn], who is huge. That’s the black guy that was involved and all the rest of y’all. Y’all telling me y’all couldn’t overpower little Captain [Kn]apps, you know, to where you don’t have to kill him. And he said oh no, he said we didn’t have to kill him. He said we could have let him live. He said we did it. We made a decision to kill him to help our self. It’s bigger than you know. It’s really bigger than you think. Bigger than I think or bigger than I know. It’s like there is some hidden equation here that I wouldn’t understand ...
And I told him, no I explained to him. I said Barry, you telling me by killing a correctional officer in an escape attempt, how are you helping yourself any way, unless you just trying to commit suicide by getting on death row ... if you don’t get killed right after y’áll do it. Because you’re going to have high energy where a lot of people are going to be very mad at you for taking out a man who was just doing his job. And he was like you don’t, you don’t really understand you know. I’m saying there was more involved, He’s like there’s more involved. But we could have let him live. But me and Jeff[rey Clark] made the decision at that time because áll of these other mother fuckers that was involved they couldn’t seem to get their head together when they were, you know, everything went down. He said me and Jeff decided we’re going to kill him. I mean it was just like shhh. It was like he flipped a switch and they killed him. Now I know there was a struggle involved and everything else. I don’t want to speak about anything that I’ve heard, you know. . And, and inmates talking about it and everything. I’m telling you specifically what Barry said.
I ¿(words attributed to Edge in bold; our emphasis underlined and italicized). Investigators then went on to question Do-mingue further as to who made the decision to kill Captain Knapp:
Tommy Block: And Barry Edge told you we could have allowed him to live?
*1268 Domingue: Yeah. Barry Edge said we could have let him live. We could have let him live.
Tommy Block: But he had to die.
Domingue: No, he said it was going to help us. It was going to help us so yeah, he had to die.
Tommy Block: And he and, he and Jeffrey made the decision.
Domingue: He said him and Jeffrey did, were the only ones that were thinking rationally during this highly charged situation. And they made a decision to help their self to kill Captain [Kn]apps. But they could have let him live. And he bluntly said he didn’t have to die.
(words attributed to Edge in bold). Although Brown argues that this statement supports the defense theory that Brown was less culpable because he alleges he was not present at the time of Captain Knapp’s death, Domingue’s statement simply does not exculpate Brown. Certainly, it inculpates Edge and Clark as the individuals who made the decision to kill Captain Knapp. However, assuming this conversation between Edge and Domingue actually occurred, Edge never implies who actually killed Captain Knapp. It is just as likely Brown carried out orders to kill Brown just as he carried out the order to move Captain Knapp into the bathroom. The jury had the benefit of Brown’s full statement that he reassured Captain Knapp that he would not be harmed, that he offered Captain Knapp water, and that Captain Knapp was alive when he left the bathroom. Yet, the jury rejected this account. It is highly implausible that, faced with Domingue’s statement which provides no additional evidence as to who actually killed Captain Knapp, the jury would have imposed a different sentence. Accordingly, we find the District Court abused its discretion in granting Brown’s motion for a new penalty phase trial based on this withheld statement which is neither favorable nor material to this | ^defendant.
JOHNSON, C.J., would grant and assigns reasons.
WEIMER, J., dissents and would grant and docket.
HUGHES, J., would grant and docket.

. Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286. (footnote omitted). . ,

. State v. Bright, 02-2793, p. 6 (La.5/25/04), 875 So.2d 37, 42.

. 527 U.S. at 281-82, 119 S.Ct. 1936.

. Bright, 02-2793 at 6, 875 So.2d at 42.