THERIOT, J.,
dissenting and assigning reasons.
hi respectfully disagree with the majority’s analysis and conclusion regarding the defendant’s second assignment of error, wherein the defendant contends that the state failed to disclose exculpatory information to him regarding leniency given to one of the state’s key witnesses, Marcus Sterling, in contravention of the rule established by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), along with its progeny. I believe the record establishes that the' state failed to timely disclose material impeachment evidence about Mr. Sterling to the defendant, and find that the state’s failure to timely disclose such evidence denied the defendant of his constitutional right to a fair trial. Thus, for the reasons set forth more fully below, I would reverse the defendant’s conviction and sentence, and would grant the defendant a new trial.
It is well-settled that the state’s suppression of evidence which is favorable to the defendant violates the defendant’s due process rights if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecuting attorney. See Brady, 373 U.S. at 86-87, 83 S.Ct. 1194. The state’s duty to disclose evidence which is favorable to the *13 defendant includes both exculpatory evidence and impeachment evidence. See State v. Kemp, 00-2228 (La. 10/15/02), 828 So.2d 540, 545 (per curiam). The Brady rule encompasses evidence that impeaches the testimony of a witness when the reliability or credibility of that witness may determine the defendant’s guilt or innocence. State v. Bright, 02-2793 (La. 5/25/04), 875 So.2d 37, 41 (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). The state must timely disclose the favorable evidence to the defendant so as to provide the defense with an adequate opportunity to present the material effectively in its case. See Kemp, 828 So.2d at 545.
In order to prove a Brady violation oh appeal, the defendant must first establish that the evidence at issue was, in fact, exculpatory or impeaching. See State v. Eley, 15-1925 (La.App. 1 Cir. 9/16/16), 203 So.3d 462, 472. If the defendant proves that the state failed to disclose Brady material, the conviction must be reversed, and a new trial must be granted, if the omission was of sufficient significance to result in the denial of the defendant’s right to a fair trial. See United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Brown, 15-2001 (La. 2/19/16), 184 So.3d 1265, 1266. Notably, both the late disclosure, as well as the nondisclosure, of exculpatory evidence may deprive the defendant of a fair trial. See Kemp, 828 So.2d at 545; State v. Williams, 448 So.2d 659, 665 (La. 1984). The impáct of either the late disclosure or the complete suppression of exculpatory evidence must be evaluated in the context of the entire record. Kemp, 828 So.2d at 545.
The jurisprudence clearly recognizes the breadth of the state’s duty to disclose Brady material. See e.g., Cone v. Bell, 556 U.S. 449, 470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (explaining that favorable evidence is subject to constitutionally mandated disclosure if it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict). Thus, for example, in State v. Lindsey, 621 So.2d 618 (La. App. 2 Cir.), writ denied, 629 So.2d 417 (La. 1993), the appellate court found that the state had a duty to disclose evidence of an understanding between the state and a witness, even though the state had not reached a consummated plea agreement with the witness; In that case, the prosecuting attorney did not make any explicit promises of leniency to the witness, but promised the witness’ attorney that he would take the witness’ testimony into consideration when entering a plea bargain. The appellate court recognized that there was no binding agreement between the state and the witness, but held that the state was required to turn over any evidence of an understanding between the state and the witness regarding the expectation of favorable consideration, thereby acknowledging that the state’s constitutional duty to disclose material evidence which is favorable to the defendant is not limited to formal, consummated, binding agreements exacted between the state and a witness.[1] See Lindsey, 621 So.2d at 624-28.
*14 In today’s opinion, the majority finds no merit to the defendant’s second assignment of error, reasoning that the state did not have & duty to disclose Brady material to the defendant, and concluding there is “no indication” that Mr. Sterling’s letter, statement, or testimony were the result of any deal entered between him and the state. In support of its finding, the majority primarily relies upon the fact that both the prosecuting attorney and Mr. Sterling denied he was induced to testify against the defendant. To this point, the record does reflect that, on the morning of trial, defense counsel asked the prosecuting attorney for any Brady material that had not yet beén turned over. The prosecuting attornéy responded by informing defense counsel—for the first time—that certain criminal |4charges had been dismissed against Mr. Sterling. The prosecuting attorney stressed that she “wouldn’t call it a deal,” and averred that the charges had not been dropped 'in exchange for Mr. Sterling’s testimony against the defendant. Thereafter, during cross-examination by defense counsel, Mr. Sterling likewise stated he had not been made any promises by the state in exchange for his testimony at trial.
In my opinion, the majority’s decision is erroneous, since, even if there was no express agreement between Mr. Sterling and the state, the record contains significant contrary circumstantial, evidence indicating, at a minimum, the reasonable impression that Mr. Sterling may have been afforded leniency in return for his statement against the defendant. For example, in the letter Mr. Sterling wrote to Ascension Parish Sheriff Jeffrey Wiley, dated March 11, 2014, Mr. Sterling himself indicated that he was willing to testify against the defendant in exchange for leniency. Mr. Sterling stated that he was in jaü on criminal charges[2] and was willing to testify against the defendant as follows: “I would take 5 years probation do [ (sic) ] to me doing something [illegible], I would testify and do a statement.” Mr. Sterling also expressed a willingness to testify about the criminal acts of another individual, and framed his ability to provide the police with information about this individual in concomitant terms with his imprisonment and punishment, noting, in an addendum to the letter, “Oh yeah I could take down the man that[’]s getting a hundred kilos of heroin a month in this parish that[’s] a promise!;] if not yall [ (sic) ] can give me life.”
More importantly, the record establishes that, during the middle of the trial, the defendant learned of additional information about Mr. Sterling that raises reasonable doubt as to the credibility and reliability of his testimony, which information had not previously been disclosed to the defendant. Specifically, upon Indirect examination, one of the state’s witnesses, Detective Gomez, testified that Mr. Sterling’s attorney had provided him with Mr., Sterling’s “rap sheet.” Defense counsel immediately objected to Detective Gomez’s statement, arguing that the testimony concerned information about Mr. Sterling that had not been disclosed in accordance with Brady. This objection set off lengthy arguments concerning potential Brady violations by the state. The defendant learned by , and through these arguments that Mr. Sterling had provided a recorded statement to the police concerning his knowledge about the bank robbery allegedly perpetrated by the *15 defendant on May 12, 2014; that the armed robbery charges against Mr. Sterling had been nolle prossed on this same date; and that the prosecuting attorney in the case against the defendant had entered the nolle prosse dismissing the charges against Mr. Sterling.[3]
Notably, although the prosecuting attorney maintained that there was no explicit agreement between the state and Mr. Sterling, she did not dispute the underlying facts that call into question the credibility of Mr.- Sterling’s testimony. Thus, for example, while the prosecuting attorney pointed out that the armed robbery charges against Mr. Sterling’s several co-defendants had also been dismissed, she admitted the charges, had been dropped on different dates, and she acknowledged that Mr. Sterling’s co-defendants all 'pled guilty to other charges, whereas the state simply dropped the armed robbery charges against Mr. Sterling on,the same date he gave a recorded statement to the police. In addition, the prosecuting attorney admitted on at least two separate occasions that there may have been some tacit connection between the state’s decision to dismiss the | (jCi-iminal charges against Mr. Sterling and Mr. Sterling’s cooperation with the police, as shown in the following colloquy;
THE COURT: Here’s the problem. I’m just—and take your time because it may very well have an explanation. But now what you’re saying is they have four people charged; three of them in return for pleading guilty to drug charges, you dismissed the armed robbery, but [Mr. Sterling] didn’t plead to anything and it still got dismissed.
[[Image here]]
[THE PROSECUTING ATTORNEY]: That is correct, but at that point ... Mr. Sterling had been in jail for quite some time, I don’t know the dates, and everyone else had long since been released from jail, pled to probation. I mean by that point he had served enough time that -1 believe he, you know, if he pled guilty tomorrow.... .1 mean the max was like 2 ½ years and I mean he was in jail a substantial amount of time before that to where even if he pled, I don’t, think that would have' changed anything. ... I mean, I don’t—I never told him I’m going to do this if you go make a statement., However, I mean he did make a statement and I mean I’m going to presume that my feeling at that point was that it was the right thing to do,
[[Image here]]
THE COURT: The only thing different is he gives a statement and the armed robbery gets dismissed. So what [the defendant is] entitled to know is did that statement influence that dismissal of that armed robbery charge because [Mr. Sterling] didn’t plead guilty to the drugs.:.,
[THE PROSECUTING ATTORNEY]: It didn’t have any influence. I can tell you I never communicated anything to Mr. Sterling.
*16 THE COURT: All right, so in other words, he never—as far as you’re aware of—
[THE PROSECUTING ATTORNEY]: I never told him—
THE COURT: —Mr. Sterling was never conveyed if you—that’s what [the defendant] needs to know.
[THE PROSECUTING ATTORNEY]: Correct. And if we could get ... those minutes I could tell you a little more accurately what all happened in that case because obviously it’s been a little while. But in my opinion ... I did not think it was a good case for armed robbery just as I did not think it was a good case against the shooter for murder. And I acted accordingly and pled those cases down accordingly....
|7[DEFENSE COUNSEL]: Your Hon- or, it’s quite a coincidence—
THE COURT: I got all that, but I’m going to let her—you know, she can print her minutes and then you just got to find out from Mr. Sterling what his impression was, you know, and whether or not that was conveyed to him. I mean I take her for her word.
[[Image here]]
[THE PROSECUTING ATTORNEY]: I never spoke to Mr. Sterling until after he was out of jail. Now I had talked to his attorney and I don’t know if his attorney said, look, I think maybe she’ll do this, you know. And I’m not going to say it’s not related—
THE COURT: No, I’m not—I understand.
[THE PROSECUTING ATTORNEY]: —because I think I probably felt like if this guy is going to help us out he shouldn’t still be sitting in jail when everybody else is home. But I mean like I said, it’s attempted possession is the charge, 2 ½ year max, and he was in jail a good bit. Again, I—
THE COURT: No, the charge y’all dismissed was robbery; it was armed robbery.
[THE PROSECUTING ATTORNEY]: Right, but that was never going anywhere .... I did not think there was sufficient evidence on the armed robbery which is why I let every single person plead to the drug charge except—
[[Image here]]
[DEFENSE COUNSEL]: See, that’s what—Judge. They don’t produce any of this stuff. They don’t produce anything on armed robbery. We’re hearing it right now. You’re hearing it for the first time.... It was good enough to hold them in jail for 6-6-7 months but it ain’t [ (sic) ] good when he’s going to ... tell these things that I think I need to say and I’m letting him out of jail coincidentally on the day he gives me the statement. I mean I should have had all of that. I should have been able to investigate that so I could adequately defend my [client]—that’s clear Brady to me.
(emphasis added).
In sum, the totality of the record evidence proves that the state failed to timely acknowledge the existence of the reasonable impression of an understanding between the state and Mr. Sterling to the defendant. Like in Lindsey, supra, the state’s failure to appropriately disclose material impeachment evidence to the defendant prevented defense counsel from making the best use of |sthe information through, inter alia, effective and vigorous cross-examination. Thus, turning to the remaining question of materiality and prejudice, it merits emphasizing that this determination must be made reflective of the “overriding concern with the justice of the finding of guilt.” Agurs, 427 U.S. at 112, 96 S.Ct. 2392. The finding of guilt is permissible only if supported by evidence establish- *17 mg guilt beyond a reasonable doubt; hence, if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has occurred, and the defendant is entitled to a new trial. If there is no reasonable doubt as to the defendant’s guilt whether or not the evidence at issue is considered, there is no justification for a new trial. Conversely, if the verdict is already of “questionable validity,” additional evidence of relatively minor importance might be sufficient to create reasonable doubt. Agurs, 427 U.S. at 112-13, 96 S.Ct. 2392.
Here, it seems clear that the state would not have had sufficient evidence to convict the defendant of armed robbery without Mr. Sterling’s testimony. Mr. Sterling testified at trial that the defendant revealed confidential information about the details of the bank robbery that had not been revealed to the public and which only the perpetrator of the robbery could have known. The state did present other evidence against the defendant, including, for example, through the testimony of Travis West, which appears sufficient to tangentially link the defendant to the overall conspiracy. However, as the majority recognizes, none of the witnesses to the armed robbery identified Mr. Sterling as the perpetrator of the crime, and the only DNA evidence introduced at trial linked another individual to the clothing found along the scent trail leading from the scene of the crime. Accordingly, the remaining record evidence does not dimmish the importance of Mr. Sterling’s testimony, especially since where the key issue in a case is the defendant’s identity as the perpetrator,, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentifieation. See State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Therefore, I find the defendant’s second assignment of error has merit. The state’s failure to timely disclose Brady material deprived the defendant of his constitutional right to a fair trial. The defendant is entitled to a new trial.
I respectfully dissent.

. In Lindsey, 621 So.2d at 626-28, the defendant was permitted to cross-examine the witness about the existence of an actual agreement between her and the state, whereupon the witness attested that she had not been made any promises in exchange for her testimony. In assessing whether the defendant was prejudiced by the failure of the state to disclose impeachment evidence, the court specifically noted that the defendant had been deprived of his confrontation clause rights. The court explained that the failure of the state to disclose the impression of an agreement between the witness and the state limited the defendant’s ability to effectively and vigorously cross-examine the witness—whose *14 credibility was essential to the verdict—and that there was a reasonable likelihood that the verdict would have been different but for the ■ suppressed evidence. Id.

. Mr. Sterling incorrectly stated in the letter that he was in jail on "principle to first degree murder” charges.

. Furthermore, the prosecuting attorney in the case against the defendant was not originally assigned to the charges against Mr. Sterling. The trial court recognized this fact after examining the paperwork concerning the charges filed against Mr. Sterling in open court, noting that Mr. Sterling had been charged with armed robbery by bill of information signed by a different Assistant District Attorney with the 23rd Judicial District Attorney’s Office, The trial court asked the prosecuting attorney about this issue, whereupon, the prosecuting attorney acknowledged that the charges against' Mr. Sterling were originally assigned to a different division, but averred that the charges had been transferred to.Jher division after Mr. Sterling’s indictment. The prosecuting attorney explained that she believed the matter had been transferred to her division because of a “co-defendant issue.”