**STATE OF LOUISIANA**       *       **NO. 2019-KA-0761**

**VERSUS**      *

**TERVANTHY A HUDSON**      *      **COURT OF APPEAL**

     **FOURTH CIRCUIT**

     * 

     **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 540-284, SECTION "D"
Honorable Paul A Bonin, Judge
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)

Leon Cannizzaro, District Attorney
Donna Andrieu, Assistant District Attorney
Kyle Daly, Assistant District Attorney
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

     COUNSEL FOR APPELLANT/DEFENDANT

                          **AFFIRMED**

         **APRIL 22, 2020**

*SCJ*
*RLB*
*RBW*

Defendant, Tervanthy Hudson, appeals his conviction for second degree battery, raising one assignment of error and requesting an errors patent review.[1] Upon review, as detailed below, we find no merit to the defendant's assigned error and no errors patent on the face of the record. Accordingly, we affirm the defendant's conviction and sentence.

## PROCEDURAL AND FACTUAL BACKGROUND

On March 7, 2018, the State filed a bill of information charging the defendant with aggravated second degree battery, a violation of La. R.S. 14:34.7. On April 11, 2018, the defendant appeared for arraignment and pled not guilty. On that same date, the trial court ordered joint pre-trial discovery. The defendant's case proceeded to a jury trial that commenced on January 23, 2019.

The following testimony was adduced at trial.

On September 11, 2017, New Orleans Police Officer Timothy Krennerich responded to a report of an aggravated battery at a residence in the 5700 block of

---

[1] Appellate counsel seeks an errors patent review "out of an abundance of caution … as counsel has been unable to make contact with the defendant-appellant to ascertain any errors he may have wished to raise."

1

Pasteur Boulevard. Upon arriving at the scene, Ofc. Krennerich observed a trail of blood leading to the doorway of the residence and, upon entering the residence, observed the victim, Shawn Blackledge, bleeding from severe head trauma. From speaking with the victim and his girlfriend, Alison Alonso, Ofc. Krennerich learned that a man known to them as "Vant", the defendant, came to the house and confronted the victim about $3.00 that he owed; when the victim refused to pay, the defendant grabbed a metal flower pot off the porch and beat the victim in the head repeatedly with it. Ms. Alonso emerged from the bedroom of the residence and saw the defendant beating the victim with the metal pot. The defendant then left the house, got into a car with a female companion, and drove away.

When Detective Donna Hogan, the lead detective on this case, arrived on the scene, she encountered the victim sitting on the front porch and she observed blood spatter on the porch. Det. Hogan also observed a large brass or copper flowerpot lying on the porch near the blood spatter. As she entered the residence, Det. Hogan noticed a large pool of blood on the floor and blood spatter on the wall. Det. Hogan spoke with the victim and his girlfriend, who stated that the defendant, known to them as "Vant" and whom they had known for approximately six months, came to the residence that day to collect money from the victim; then, a physical altercation erupted between the two men, the defendant hit the victim in the head with the flowerpot, and the defendant fled. Ms. Alonso also stated that she knew where defendant lived and worked, and she showed Det. Hogan a Facebook profile picture belonging to Vant A. Hudson.

Based upon the information provided by the victim and Ms. Alonso, Det. Hogan went to the grocery store that Ms. Alonso identified as the defendant's workplace. Det. Hogan spoke with a manager and Human Resources employee

2

who informed that the defendant no longer worked at that store; but, they provided Det. Hogan with the defendant's full name, date of birth, and his Mississippi driver's license photo. Det. Hogan then used the driver's license photo for a confirmation photo procedure with the victim, who identified the defendant as the man who attacked him.[2] Det. Hogan also attempted to locate the defendant at a residence in St. Bernard Parish, based on Ms. Alonso's statement that she knew where the defendant lived; but, the defendant was not at that location. The next day, Det. Hogan obtained an arrest warrant for the defendant.

The victim, Shawn Blackledge, testified that several months before the incident on September 11, 2017, a friend introduced the defendant to him as "the neighborhood weed dealer." The victim became friendly with the defendant, and the defendant had previously been to the victim's house. On the day of the incident, the defendant came to the victim's house demanding a few dollars, and, when the victim refused to give him any money, the defendant became enraged, grabbed the flowerpot on the porch, and began beating the victim in the face and head with it.[3] The victim lost consciousness during the attack; when he regained consciousness, the defendant was gone. When the police arrived, the victim described the incident and identified his attacker before being transported to the hospital. At the hospital, the victim learned that the injuries he sustained from the attack included a broken nose, broken jaw, broken cheekbone, deep head and facial lacerations, and a broken tooth. While he was in the hospital, Det. Hogan brought

---

[2] Det. Hogan testified that there are three procedures used for identification: confirmation photo; six-pack photo line-up; and show-up identification on the scene. She elected to do a confirmation photo since the victim and Ms. Alonso stated that they had known the defendant for some time and saw him regularly.

[3] From photographs of the scene, the victim identified the same object that other witnesses referred to as "a flowerpot;" however, the victim referred to the object as "an iron dog statue."

3

him a photograph, from which he identified the defendant as his attacker. The victim also identified the defendant in court during the trial.

The defendant testified that sometime before the incident on September 11, 2017, he was working at the Rouses grocery store on Franklin Avenue when he met the victim and Ms. Alonso, whom he befriended. The defendant talked with the victim about getting a second job at the Superdome, where the victim worked, and the two men exchanged phone numbers. On the day of the incident, the defendant went to the victim's house to check up on any job prospects. When he knocked on the door, the victim opened the door looking "glossy-eyed," acting belligerent, and using racial slurs. The defendant testified that the victim pushed him down on the porch and began approaching aggressively, so the defendant kicked the victim to keep him away. As they were scuffling on the porch, Ms. Alonso came outside and the defendant asked her to get the victim inside the house so he could leave. The defendant left the victim's house with a female companion who had driven him there. The defendant denied picking up or using the flowerpot, or any object, to hit the victim. The defendant also denied being a "weed dealer" or selling any drugs. The defendant testified that he did not speak with the victim or Ms. Alonso after that incident. He did not know that a warrant had been issued for his arrest as a result of that incident; and he was arrested about a month later while working in City Park.

Under cross-examination, the State questioned the defendant about the sequence of events that led to the altercation with the victim. The defendant maintained that the victim pushed him first, he fell backwards, and he began kicking at the victim to defend himself. The State then asked the defendant if he would characterize what he did to the victim as a "three-piece combo." The

4

defendant denied knowing what the expression meant. The State asked if the defendant would be able to identify his own voice and played a portion of a jailhouse call. Defense counsel objected to the introduction of the previously undisclosed jailhouse recordings.

Before proceeding with cross-examination, the trial court allowed defense counsel to review, in chambers, six jailhouse recordings. After listening to the recordings, defense counsel objected to the State's non-disclosure of statements made by the defendant. The trial court ruled to allow the State limited use of the recordings to question the defendant about his use of the term "three-piece combo" in discussing the altercation with the victim; and the trial court ruled that the defense could choose to introduce other portions of the jailhouse recordings, to support the defendant's claim of self-defense.

Cross-examination of the defendant resumed, and the State played a portion of one of the jailhouse recordings. The defendant identified his voice on the recording; but, the defendant did not recall talking about a "three-piece combo" in reference to the altercation with the victim. The State also played portions of other jailhouse calls and questioned the defendant about his statements regarding witnesses and the victim's injuries.

Following the defendant's testimony, the trial concluded, and the jury found the defendant guilty of the lesser-included offense of second degree battery. *See* La. C.Cr.P. art. 814(A)(20). The defendant did not file a motion for new trial or post-verdict judgment of acquittal.

On March 26, 2019, the trial court sentenced the defendant to three years at hard labor, two years suspended, and two years active probation. Subsequently, the defendant filed a timely motion to reconsider sentence, which the trial court

5

granted. On June 7, 2019, the trial court vacated the defendant's original sentence and resentenced him to two years at hard labor, one year and six months suspended, and two years of active probation.

The defendant's timely appeal followed.

## DISCUSSION

### *Assigned Error*

In his sole assignment of error, the defendant argues that the trial court erred in admitting the recordings of the defendant's jailhouse calls, because the State's failure to disclose those recordings prior to trial violated discovery rules and constituted a *Brady* violation.[4] We will first address whether the defendant has established a violation of the discovery statutes, before addressing the contention that the State violated *Brady*.

The defendant argues that the State violated its continuing duty to disclose all discoverable evidence, pursuant to the trial court's order for joint pre-trial discovery and La. C.Cr.P. art. 729.3,[5] by failing to timely disclose the six recordings of the defendant's calls from the jailhouse following his arrest. According to the defendant, and reflected in the record, the State's inventory of discovery did not disclose the jailhouse recordings; and, in the State's notice of intent to use statements by the defendant per La. C.Cr.P. art. 768,[6] the State only

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[5] La. C.Cr.P. art. 729.3 provides,

> If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is, or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspections.

[6] La. C.Cr.P. art. 768 provides,

6

provided notice of statements allegedly made to the victim and his girlfriend, between September 11 and 14, 2017. The defendant, therefore, argues that the State's failure to disclose and produce the jailhouse recordings prior to trial violated the joint pre-trial discovery order, as well as La. C.Cr.P. arts. 716 and 718.

La. C.Cr.P. art. 716 provides, in pertinent part, for the discovery of statements by the defendant, as follows:

> A. Upon written motion of the defendant, the court shall order the district attorney to disclose to the defendant, and to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
>
> B. Except as provided by Paragraph C of this Article, upon written motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant or any codefendant which the district attorney intends to offer in its case in chief at the trial, with the information as to when, where, and to whom such oral confession or statement was made.

In addition, the discovery of documents and tangible objects is governed by La. C.Cr.P. art. 718, which provides in pertinent part, as follows:

> …[U]pon written motion of the defendant, the court shall order the district attorney…to permit or authorize the defendant or an expert working with the defendant, to inspect, copy, examine, test scientifically, photograph or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof that are within the possession, custody, or control of the state, and that are intended for use by the state as evidence in its case in chief at trial, or were obtained from or belong to the defendant.

---

Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.

Louisiana's criminal discovery rules, La. C.Cr.P. art. 716 *et seq.*, are "intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to respond to the State's case, and to allow a proper assessment of the strength of the State's case." *State v. Girard*, 12-0790, p. 4 (La. App. 4 Cir. 3/6/13), 110 So.3d 687, 690. In the event the State fails to comply with the discovery rules, "[i]t is within a trial court's discretion to exclude evidence or enter any appropriate order to remedy a party's violation of a discovery right." *Girard*, 12-0790, p. 5, 110 So.3d at 690 (citing *State v. Lee*, 00-2429, p. 19 (La. App. 4 Cir. 1/4/01), 778 So.2d 656, 666). Generally, "discovery violations do not provide grounds for reversal unless they have actually prejudiced the defendant." *State v. Garrick*, 03-0137, p. 5 (La. 4/14/04), 870 So.2d 990, 993.

The defendant argues that the State was obligated to disclose the jailhouse recordings, in accordance with La. C.Cr.P. arts. 716 and 718, because they were recorded statements made by the defendant that were within the possession, custody, control, or knowledge of the State. Moreover, the defendant contends that the State's failure to disclose the existence or content of the taped statements to the defense until mid-trial prevented the defendant from exercising his constitutional right to a defense, because that evidence could have affected whether or not the defendant chose to testify or call other witnesses.

The State counters the defendant's arguments by pointing out that La. C.Cr.P. arts. 716 and 718 both require a "written motion of the defendant," that the defendant admits he never filed a written motion for discovery, and that there is no indication in this record that the State agreed to open file discovery. In addition, the State argues it did not intend to, nor did it use the jailhouse recordings in its

case in chief at trial, and the State only used the recordings to rebut the defendant's testimony that he acted in self-defense.

The record reflects, as noted by the State, the defendant did not file a written motion for discovery, as required by La. C.Cr.P. arts. 716 and 718; but, in consideration of the trial court's order for joint pre-trial discovery and the State's knowledge of the existence of the defendant's recorded statements, the State arguably had a duty to disclose or inform the defendant of these recordings. However, the record also reflects that the State did not use the recordings in its case in chief at trial and used them only to rebut the defendant's testimony that he acted in self-defense.

Similarly, in *State v. Hartford*, 14-0643 (La. App. 4 Cir. 3/18/15), 162 So.3d 1202, this Court considered the significance of whether the State intended to offer the recordings in evidence at trial when determining whether the State violated discovery rules. The defendant in that case also argued that the State violated discovery rules when it failed to disclose the defendant's recorded jailhouse calls prior to trial but used those recordings during cross-examination of the defendant. In reviewing the relevant jurisprudence, this Court found that when the evidence was not used by the State on direct examination, or mentioned during the opening statement, but offered the evidence in rebuttal to counter a defendant's direct testimony, Louisiana courts have concluded the State did not have intent to use the evidence at trial and, therefore, there was no violation of the discovery statutes. *Hartford*, 14-0643, pp. 18-19, 162 So.3d at 1212-1213 (collecting cases).

Applying that reasoning to this case, we find that the State did not intend to use the defendant's jailhouse calls as evidence in its case in chief at trial. During his direct testimony, the defendant testified that the victim was the aggressor by

9

pushing him down to the ground and approaching him aggressively, and the defendant denied hitting the victim with any object or inflicting serious injury on him. On cross-examination, the State offered the defendant's jailhouse calls to rebut the defendant's assertions that he acted in self-defense; in one call, the defendant makes reference to a "three piece combo" against the victim; and in another call, the defendant discussed the victim's injuries. Thus, the record reflects that the State only offered the recordings to rebut the defendant's claim that he acted in self-defense. Considering the State did not intend to use the defendant's jailhouse calls in its case in chief, we find no clear violation of the discovery statutes.

But, the defendant also argues that the State violated its affirmative, constitutional duty to disclose the recordings, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d (1963). The defendant contends that the jailhouse calls constituted *Brady* material, because they contain exculpatory statements that are material to guilt or punishment, and that the State's late disclosure during trial compromised the defendant's ability to present a complete defense.

Pursuant to *Brady*, the State has an affirmative duty to disclose exculpatory evidence favorable to the defendant. 373 U.S. at 86-87, 83 S.Ct. at 1196-97. But Louisiana and United States Supreme Court jurisprudence both acknowledge that not every violation of the broad duty of disclosure constitutes a *Brady* violation. *State v. Brown*, 15-2001, pp. 1-2 (La. 2/19/16), 184 So.3d 1265, 1266 (citing *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

As laid out by the United States Supreme Court in *Strickler*, a "true *Brady* violation" consists of three components: "The evidence at issue must be favorable

to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. at 281-82, 119 S.Ct. at 1948. Furthermore, the Court held that "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281, 119 S.Ct. at 1948.

Discussing the reviewing court's role in determining whether the State has violated *Brady*, the Louisiana Supreme Court holds as follows:

> [T]he reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. Instead, a *Brady* violation occurs when the "evidentiary suppression" undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

*State v. Bright*, 02-2793, p. 6 (La. 5/25/04), 875 So.2d 37, 42. In addition, the Court has held that "[t]he mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense." *State v. Sparks*, 88-0017, p. 68 (La. 5/11/11), 68 So.3d 435, 486, *cert. denied sub nom*, __ U.S. __, 132 S.Ct. 1794, 182 L.Ed.2d 621 (citing *United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)).

In light of the relevant jurisprudence, and upon our review of the record and the defendant's arguments, we do not find that the defendant has established a *Brady* violation. First, we note that the defendant has not specifically identified which calls or statements were exculpatory. Second, although the trial court permitted defense counsel to review all six recordings in chambers prior to them

11

being played for the jury and allowed the defense counsel to use the recordings in re-direct examination of the defendant, the defense did not utilize any of the calls in re-direct. Nevertheless, the defendant argues that disclosure of the recordings would have influenced the defendant's decisions to testify and whether to call other witnesses for the defense, thereby affecting the preparation of his defense. But, in light of the relevant jurisprudence, we find the defendant's speculative argument insufficient to establish a *Brady* violation.

Based on the foregoing review, we find no merit to the defendant's argument that the trial court erred in allowing the State to admit the jailhouse recordings that were not disclosed prior to trial. This assignment of error is without merit.

### Errors Patent Review

The defendant's counseled brief assigns the single error discussed above and then requests an errors patent review, "out of an abundance of caution," noting that counsel was unable to contact the defendant to ascertain any other errors he may wish to raise on appeal. Appellate counsel also sets forth that the brief has been filed to conform with *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241 and *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

In *Jyles, supra*, the Louisiana Supreme Court adopted the procedure outlined by this Court in *State v. Benjamin*, 573 So.2d 528 (La. App. 4th Cir. 1990), which sets forth the requirements for appellate counsel to demonstrate that constitutionally-effective assistance of counsel has been afforded a defendant whose appeal is wholly frivolous. In accordance with that procedure, appellate counsel must submit a brief that includes a thorough review of the procedural history and facts of the case, as well as a "detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing

12

in the first place. *Jyles*, 96-2669, p. 3, 704 So.2d at 242 (citing *State v. Mouton*, 95-0981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177). The counseled brief need not "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit." *Jyles*, 96-2669, p. 2, 704 So.2d at 241 (citing *Jones v. Barnes*, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 3313-14, 77 L.Ed.2d 987 (1983)). Appellate counsel need only demonstrate that he has "cast an advocate's eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Id.*

When conducting a review for compliance with *Jyles* and *Anders*, *supra*, the appellate court must conduct an independent review of the record to determine if any legitimate basis for the appeal exists or whether the appeal is wholly frivolous. *See State v. Poree*, 14-0691, p. 10 (La. App. 4 Cir. 3/18/15), 166 So.3d 372, 378. Upon our independent review of this case, we find that appellate counsel has provided a detailed review of the procedural history and facts of the case, and presented a thorough argument on the one issue raised for our review. Furthermore, we have performed an independent and thorough review of the record and we find no non-frivolous issues or court rulings that arguably support this appeal. Therefore, we are satisfied that appellate counsel has adequately complied with the necessary requirements and has rendered constitutionally-effective assistance of counsel on appeal. Appellate counsel does not seek to withdraw.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**AFFIRMED**