# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #021

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**PER CURIAM**:

2018-B-1979      IN RE: JOHN JULIUS STEGER, IV

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Julius Steger, IV, Louisiana Bar Roll number 24657, be and he hereby is suspended from the practice of law for a period of eighteen months.  It is further ordered that all but six months of this suspension shall be deferred.  Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of five years, subject to the conditions recommended by the disciplinary board.  The probationary period shall commence from the date respondent and the ODC execute a formal probation plan.  Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

WEIMER, J., concurs in part, dissents in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1979

IN RE: JOHN JULIUS STEGER, IV

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, John Julius Steger, IV, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

On February 23, 1993, respondent was arrested during Mardi Gras on charges of disturbing the peace and obscenity. Alcohol consumption was involved. Records could no longer be located regarding this arrest.[1]

On February 18, 2001, respondent was again arrested after having consumed alcohol during Mardi Gras. He was charged with interfering with police and public nudity. The charges were ultimately dismissed.

On October 3, 2002, respondent was arrested and charged with operating a vehicle while intoxicated, reckless operation of a motor vehicle, hit and run driving, and failure to use a seatbelt. Respondent had consumed alcohol and the prescription sleep aid Ambien. He was allowed to plead guilty to a reduced charge of reckless operation of a vehicle under the provisions of La. Code Crim. P. art. 894.

---

[1] According to respondent, the charges were ultimately dismissed.

On March 8, 2003, after consuming alcohol and Ambien, respondent was arrested and charged with operating a vehicle while intoxicated and exceeding the speed limit. He was permitted to enter a guilty plea to a reduced charge of reckless operation of a vehicle under the provisions of La. Code Crim. P. art. 894.

On June 28, 2003, respondent was arrested and charged with simple battery. The incident stemmed from an argument with his girlfriend at their apartment. The matter was ultimately dismissed without prosecution.

None of the above incidents were reported to the ODC by respondent or any prosecuting authority in the State of Louisiana.

On November 4, 2013, respondent consumed wine with dinner and later took an Ambien "to help him sleep." He continued to drink wine thereafter and estimates that he drank two bottles of wine that evening. At some point, respondent got into his car and drove it into a tree, causing him to hit his head on the windshield. Emergency medical services were called to the scene and respondent was taken to the emergency room. While there, respondent was fitted with a neck brace, which he proceeded to remove. As a nurse attempted to restrain him and put the neck brace back on, he bit the nurse, leading to a charge of battery.[2] Respondent's blood alcohol level at the time registered at .2%, more than two and a half times the legal limit. Respondent was arrested and released.

The following day, on November 5, 2013, respondent consumed more wine, took another Ambien, and blacked out. He then entered his vehicle and commenced driving. Respondent was later arrested for driving erratically. His blood alcohol level at the time registered at .151%, nearly twice the legal limit.[3]

---

[2] Respondent subsequently pleaded guilty to a reduced charge of simple assault.

[3] Respondent subsequently pleaded guilty to DWI.

It was only after these two final incidents in successive days that the matter was reported to the ODC by the prosecuting authority.

Respondent submitted to an inpatient evaluation at the Pine Grove Behavioral Health and Addiction Services. The evaluation results, which were not available to the ODC until July 30, 2015, reflect that respondent suffered from alcohol dependence. The medical professionals at Pine Grove indicated that they were not confident in respondent's ability to meet the responsibilities of a practicing attorney and recommended that he enter a ninety-day residential treatment program.

As of April 2016, respondent had not participated in an inpatient treatment program, despite the ODC urging him to do so. Instead, he chose to participate in an intensive outpatient program with Addiction Recovery Resources of New Orleans.

## DISCIPLINARY PROCEEDINGS

In September 2016, the ODC filed formal charges against respondent. The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer). Respondent answered the formal charges and admitted only some misconduct.

Prior to a formal hearing in this matter, respondent filed into the record a document styled "Stipulations by Respondent," wherein he stipulated as follows:

1. Respondent has received and reviewed all of the exhibits proposed to be introduced into the hearing of this matter by the ODC and stipulates as to their admissibility and entry into evidence in this proceeding.

3

2. Respondent has reviewed and hereby stipulates to all of the factual allegations contained in the formal charges and to the Rules of Professional Conduct violations set forth therein.

3. Respondent has committed to entry into an inpatient treatment program during May 2017 in compliance with the recommendations of the multi-disciplinary professionals at both Pine Grove and Palmetto Addiction Recovery Center.

Respondent entered into a treatment program at Palmetto and successfully completed the ninety-day program in September 2017. On September 11, 2017, he executed a five-year recovery agreement with the Judges and Lawyers Assistance Program ("JLAP"). Respondent is currently in full compliance with the agreement.

*Formal Hearing*

This matter proceeded to a hearing conducted by the hearing committee in April 2018. Both respondent and the ODC introduced documentary evidence. The ODC called no witnesses to testify at the hearing. Respondent called the following witnesses: attorneys Kurt Garcia and Christine DeSue, who have a friendship and business relationship with respondent; William Arendell, LCSW, who works in the areas of addiction and trauma; and Buddy Stockwell, the Executive Director of JLAP. Respondent also testified on his own behalf and on cross-examination by the ODC.[4]

*Hearing Committee Report*

---

[4] At the hearing, the parties openly referred to a petition for consent discipline which had been filed by respondent and the ODC but rejected by the court. Any such references in this record were inappropriate under Supreme Court Rule XIX, § 20(F), which provides that when a petition for consent discipline has been rejected, "[t]he joint motion shall remain sealed **and shall not be disclosed or made available for use in any other proceeding except upon order of the Court**." [Emphasis added.] There is no provision by which Rule XIX, § 20(F) can be waived by the parties.

After considering the evidence and testimony presented at the hearing, the hearing committee acknowledged that respondent stipulated to all of the factual allegations and rule violations as set forth in the formal charges. The committee also mentioned that respondent, who has multiple instances of DWI, successfully completed a ninety-day inpatient treatment program at Palmetto and entered into a five-year recovery agreement with JLAP. The committee noted that respondent has at all times been fully compliant with his recovery agreement and has a sustained, successful track record of recovery.

The committee recognized that based on this court's prior jurisprudence, the baseline sanction for multiple instances of DWI violations is a one year and one day suspension from the practice of law.

Considering the overall evidence, the committee recommended respondent be suspended from the practice of law for one year. The committee also recommended that respondent be placed on probation for a period to coincide with his five-year JLAP recovery agreement.

The ODC filed a brief with the disciplinary board, asking the board to impose a baseline sanction of one year and one day and then assess mitigating factors to determine if a portion of the suspension should be deferred, subject to respondent's successful completion of his JLAP recovery agreement. In his brief, respondent asked the board to impose an eighteen-month suspension, fully deferred, along with five years of probation, subject to respondent's compliance with his JLAP recovery agreement.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and are supported by the record. After

considering the testimony of the witnesses and the exhibits submitted at the hearing in this matter, the board made the following additional findings.

1. Respondent was prescribed Ambien as a sleep aid over a long period of time. He no longer takes Ambien and now abstains from all alcohol and addictive substances, as documented by his full compliance with his JLAP recovery agreement, but he candidly acknowledged that he was on a dangerous, downward spiral in his life due to his alcohol abuse combined with Ambien.

2. Respondent testified that he would not be as far along in his recovery as he is today were it not for the efforts of the Chief Disciplinary Counsel and JLAP. This process has encouraged, prompted, and facilitated respondent's recovery, and he is extremely grateful to be a more healthy and fit person today.

3. Respondent has been evaluated by multiple experts, including multiple JLAP-approved experts. His evaluations and treatment include the following:

   a. An initial JLAP evaluation by Alexandra Casalino, Psy.D., a clinical psychologist, in April 2015. Dr. Casalino diagnosed respondent with Alcohol Use Disorder and recommended he enter into a JLAP monitoring agreement and participate in an outpatient substance abuse treatment program.

   b. A three-day inpatient JLAP evaluation by doctors and clinical staff at Pine Grove beginning on June 22, 2015. This evaluation resulted in a diagnosis of Alcohol Withdrawal, Alcohol Dependence, and Sedative-Hypnotic Abuse, and a recommendation that respondent enter a JLAP monitoring agreement and participate in a ninety-day inpatient substance abuse treatment program.

   a. Evaluation and treatment by William Arendell, LCSW, beginning on May 14, 2016, which resulted in a recommendation that respondent complete a thirty-day intensive outpatient program to include drug

6

screening. On December 30, 2016, respondent voluntarily began submitting to random drug and alcohol screening. He continues to treat with Mr. Arendell.

b. An updated, three-day inpatient JLAP evaluation by doctors and clinical staff at Palmetto beginning on January 9, 2017. This evaluation resulted in a diagnosis of Alcohol Use Disorder-Severe, History of Alcohol Withdrawal Symptoms Requiring Detoxification Protocol; and Sedative/Hypnotic Use Disorder-Mild, and a recommendation that respondent enter a five-year JLAP monitoring agreement and participate in a ninety-day inpatient substance abuse treatment program.

c. A ninety-day inpatient treatment program at JLAP-approved Palmetto completed on September 7, 2017. Palmetto recommended that respondent enter a five-year JLAP recovery agreement with conditions.

4. After completing his residential treatment at Palmetto, respondent promptly contacted JLAP and executed the recommended recovery agreement on September 11, 2017.

5. Mr. Garcia has known respondent for approximately three years. Mr. Garcia testified that he has shared office space with respondent and has referred tax law clients to respondent. Mr. Garcia testified that respondent appeared to be sad and depressed about the most recent alcohol-related incident and arrest. Mr. Garcia testified that while respondent was initially angry and upset about the disciplinary proceedings, over the past several months, respondent has taken full responsibility for his actions and has shown remorse and regret for his behavior. Mr. Garcia sees an obvious improvement in respondent.

6. Ms. DeSue testified that she has known respondent socially for approximately ten years and has been in the same business networking group with him for

the last five years. Ms. DeSue testified that she works with respondent on cases, speaks with him daily by telephone, and sees him approximately twice a week. She described respondent as very knowledgeable, accessible, intelligent, and professional. Ms. DeSue testified that she is aware of respondent's alcohol abuse treatment and noted that he was forthcoming about his alcohol-related issues and conduct. She noted obvious changes in respondent over the past several months and described him as "a different person now," "sharper," "compassionate," and highly dependable. Ms. DeSue testified that respondent has expressed and demonstrated remorse and regret for his conduct.

7. Mr. Arendell testified that he sees respondent once or twice a week as part of the JLAP-approved recovery program. Mr. Arendell indicated that respondent has been forthcoming, cooperative, and progressing in the recovery process. Mr. Arendell testified that a causal link exists between respondent's alcohol abuse disorder and his misconduct. Mr. Arendell testified that respondent is making appropriate progress in his journey forward in sobriety.

8. Mr. Stockwell testified that he has known respondent since 2015, when respondent participated in his first JLAP evaluation. Mr. Stockwell testified about respondent's journey to full acceptance of the JLAP recovery program and confirmed respondent's success in the program, stating:

> In the end, he's been through a really tough path and done a good job and he's doing really well in our program. I know I'm jumping to the finish line for you there, but obviously he has struggled, but he has demonstrated to us in his participation in JLAP and his completion of Palmetto, however rocky it may have been, that he really is in a good recovery and doing well.

8

Mr. Stockwell confirmed that respondent completed the ninety-day inpatient treatment program at Palmetto and signed his JLAP recovery agreement. Mr. Stockwell testified that respondent has been fully compliant with his recovery agreement, which requires ongoing participation in AA with an AA sponsor, participation with a JLAP monitor, counseling with Mr. Arendell, and aftercare through Palmetto. Mr. Stockwell testified that respondent must submit monthly sobriety reports and, with the exception of AA, JLAP receives periodic update reports from all involved. Mr. Stockwell indicated that his office has received no negative or disconcerting feedback on respondent since he has been under JLAP monitoring. Mr. Stockwell confirmed the causal link between respondent's alcohol abuse and misconduct, stating:

> Well, it's exactly the kind of behavior that we expect to see when people are under the influence of substances: wrecking cars, fighting with police, in a blackout, not knowing what they're doing.

Mr. Stockwell confirmed that JLAP will monitor respondent for five years, which will include random drug and alcohol screenings, and that respondent signed a waiver that allows JLAP to notify ODC immediately should he fail a screen or demonstrate any attitude problems or other issues indicating a problem with his recovery. Mr. Stockwell testified that it was the professional opinion of JLAP's clinical staff that respondent is fit to practice law, in recovery and under contract, and that it is "extremely unlikely" he will engage in future alcohol-related misconduct if he remains compliant with JLAP and completes his contract.

9. Respondent testified that he has stipulated to all factual allegations and rule violations alleged in the formal charges and that he continues to stand by those stipulations. Respondent testified that he has not consumed alcohol and has submitted to random testing through both Quest Diagnostics and JLAP since

December 2016. Respondent testified that he has embraced his recovery and the JLAP monitoring process and that he is fully compliant with JLAP.

10. Respondent demonstrated mitigation through his testimony. He testified that he gained nothing personally as a result of his conduct. Respondent thanked Mr. Plattsmier and Mr. Stockwell for pushing him and encouraging him to seek treatment. He credited their "tough love" approach as a main reason for his success in recovery.

The board determined that respondent knowingly violated duties owed to the public and the legal profession. The amount of actual injury was significant. He caused actual harm to himself and to others, particularly to the nurse upon whom he committed an assault. He acknowledged that his conduct also hurt himself, his family, and the legal profession. The amount of potential injury was also very great. He caused potential harm to those he endangered by driving while intoxicated. He could have seriously injured or killed himself or others or caused significant property damage. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the baseline sanction is suspension.

The board found the following aggravating factors are present: a pattern of misconduct, multiple offenses, substantial experience in the practice of law (admitted 1996), and illegal conduct. The board found the following mitigating factors are present: absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems,[5] full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, good character and reputation, mental disability or chemical dependency including alcoholism or drug abuse, imposition of other penalties or sanctions,[6] and remorse.

---

[5] Respondent was in a volatile relationship that ended in divorce in September 2017.

[6] In connection with the criminal cases against him, respondent was placed on probation, paid fines, and was required to use an interlock device on his car.

After further considering respondent's misconduct in light of this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for eighteen months, fully deferred, subject to a five-year period of probation with the following conditions:

1. Respondent will be required to enter into a new JLAP contract for five years, or as otherwise recommended by JLAP, and must remain in compliance with its terms, with periodic reports submitted to the ODC; and

2. Any failure of respondent to comply with the above conditions, or any misconduct during the probationary or JLAP contract period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.

The board further recommended respondent be assessed with the costs and expenses of this proceeding.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

11

As previously stated, the facts in this case are not in dispute as they were stipulated to by respondent. Respondent has also stipulated to violating Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct. Accordingly, the only issue to be resolved by this court is the appropriate sanction for the misconduct.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent knowingly violated duties owed to the public and the legal profession. The amount of injury was significant. Respondent caused actual harm to himself, the legal profession, and to the nurse upon whom he committed an assault. He also caused potential harm to those he endangered by driving while intoxicated. The baseline sanction for respondent's misconduct is suspension. The aggravating and mitigating factors recognized by the board are supported by the record.

The hearing committee, the disciplinary board, and the parties agree on one aspect of an appropriate sanction, namely that respondent be subjected to a five-year period of probation to coincide with his JLAP recovery agreement. The divergence concerns the length of the suspension, and how much, if any, of that suspension should be deferred.

The hearing committee recommended respondent be suspended for one year, while the disciplinary board, citing *In re: Ashley,* 18-0408 (La. 5/25/18), 243 So. 3d

547, recommended a fully deferred eighteen-month suspension. Respondent agrees with the board's recommendation, but the ODC argues that the baseline sanction is a one year and one day suspension, and that no more than six months of that suspension should be deferred.

The board's reliance on *Ashley* is misplaced. That case did not involve any DWI arrests, but was rather a simple application of the mitigating factor of chemical dependency to a case of attorney misconduct. The case which controls our analysis of the proper sanction for DWI arrests is *In re: Baer*, 09-1795 (La. 11/20/09), 21 So. 3d 941, in which we stated:

> We have imposed sanctions ranging from actual periods of suspension to fully deferred suspensions in prior cases involving attorneys who drive while under the influence of alcohol. **However, as a general rule, we tend to impose an actual suspension in those instances in which multiple DWI offenses are at issue,** as well as in cases in which the DWI stems from a substance abuse problem that appears to remain unresolved. [Emphasis added.]

Respondent has "multiple DWI offenses" and other alcohol-related incidents, including a simple battery with injury. Clearly, under *Baer*, an actual period of suspension is warranted.

Based upon our jurisprudence, we will suspend respondent from the practice of law for eighteen months. In light of the mitigating factors present, we will defer all but six months of the suspension, subject to a five-year period of probation with the conditions recommended by the disciplinary board.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that John Julius Steger, IV, Louisiana Bar Roll number 24657, be and he hereby is suspended from the practice of law for a period of eighteen months. It is

13

further ordered that all but six months of this suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of five years, subject to the conditions recommended by the disciplinary board. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

# SUPREME COURT OF LOUISIANA

## NO. 2018-B-1979

## IN RE: JOHN JULIUS STEGER, IV

*ATTORNEY DISCIPLINARY PROCEEDINGS*

**WEIMER, J.**, concurring in part and dissenting in part.

I agree with the majority's determination that discipline is merited. I respectfully dissent from the sanction.

Given the respondent's remarkable recovery and the outstanding recommendations of the character witnesses and those involved in his recovery, I believe a different sanction that is more tailored to supporting a sustained recovery is appropriate. Specifically, I would impose a one-year-and one-day suspension, with all but six months deferred, subject to a probationary period coinciding with the five-year recovery agreement the respondent has already executed with the Judges and Lawyers Assistance Program ("JLAP").

The record in this case reveals that the respondent has greatly benefitted from the approach recommended by JLAP. Thus, I believe that, because the majority properly ties the probationary period directly to the respondent's adherence to the JLAP agreement, it is unnecessary for the majority to impose an 18-month period of suspension. A period of a year and a day would adequately serve the interests of the disciplinary system. That period would impose a requirement for the respondent to undertake the rigorous procedure to petition for reinstatement if it ever became necessary (as for example, by failing to sustain his recovery) for his probation to be revoked and the deferred period of suspension imposed.